### HOLMES v. DAVENPORT .et al.

(Supreme Court, Special Term, New York County. May, 1891.)

INSURANCE—PREMIUMS—PAYMENT WITH STOLEN MONEY.
Life insurance for the benefit of the wife of the insured was procured and the premiums paid with money stolen by the insured from his partner. The amount stolen was much greater than the amount of the policies. Held, in an action by the partner to recover the proceeds of such policies, that defendants would be enjoined from disposing of the fund pendente lite. [1]

Action by Charles S. Holmes against William B. Davenport, as administrator, etc., and others. Plaintiff moves for an injunction pendente lite.

Abbott Bros., for plaintiff. Olin, Rives & Montgomery, for defendants.

O'BRIEN, J. The object of this motion is to obtain an injunction restraining the payment or other disposition of moneys pendente lite. The action is brought to recover $56,706.10, the profits of certain policies of insurance upon the life of Arthur C. Gilman, deceased. Those policies of insurance on the life of Gilman were issued by the insurance companies, payable to his wife. Upon his death, the amounts due upon the policies were collected, and are now on deposit in a trust company. The complaint and affidavits used in support of this motion show that Arthur C. Gilman, during his life-time, stole from his partner the sum of $222,000, and that out of this stolen money he paid all the premiums on these policies, which amounted to something over $4,467.80; and on this is based the claim that equity will hold the policies to be the property of the firm. Until this claim can be determined by a trial, the plaintiff asks for an injunction and a receiver, so as to prevent the payment of the moneys over to the wife, who it is alleged is not pecuniarily responsible. These are provisional remedies, in the sound discretion of the court, and before being granted it should, at least, be made to appear that there is a reasonable probability that the court will ultimately decide that the plaintiff is entitled to the relief which he demands in his complaint, and that the property is in danger of being lost before a full investigation and final determination can be had. The question, therefore, presented is whether the surviving partner, upon establishing the facts alleged, will be entitled to recover any more than the amount of premiums paid. The plaintiff claims not only the amount of the premiums, but also the policies which were the fruit of these premiums, upon the theory that equity will follow the proceeds, impress a trust upon them, and take them from the plaintiff. The relation in

---

[1] In Shaler v. Trowbridge, 28 N. J. Eq. 595, referred to by Mr. Justice O'BRIEN, it was held that, where one pays the premium on life insurance with money stolen by him, public policy forbids that the family should be allowed to enjoy the proceeds of such insurance. The court say: "It is urged that a life policy should be exempt from the equitable rule which applies to other transactions, because it differs in its character from ordinary investments, and is a beneficent provision for the family, which should be favored. Public policy clearly forbids the adoption of this suggestion; it would invite the commission of the wrong by assuring the wrong-doer that there is one mode in which he could surely profit by his turpitude,—in securing a provision for his family. The policy is the thing which the partnership money purchased, and it stands in the place of what was corruptly abstracted."

which copartners stand towards each other is essentially one of mutual trust and confidence. Each partner, as to his copartners, is a fiduciary. The capital of every copartnership is a trust fund, devoted to the purposes of the copartnership, and if either of the partners diverts any portion thereof he is guilty of a breach of trust. It is equally well settled that equity will, in cases of theft or diversion of a trust fund, follow the misapplied trust fund or stolen money through any changes of investment or form until the means of ascertainment fail or the rights of *bona fide* purchasers or incumbrances intervene, (*Newton* v. *Porter*, 69 N. Y. 133;) but if the stolen money or diverted fund has been mingled with other money, or has been invested with other money, then equity will not give the mingled amount or the whole investment to the plaintiff, but will give him a lien to the extent of the money taken and mingled or invested, with interest.

As exemplified in this case, if the $4,467.80, which had been stolen from the firm by Gilman, had been given to his wife, and with that money she had purchased a farm or other property, then the defrauded partners would have a right to follow the fund or property into which it was converted, and recover the same, no matter how much it might have increased in value. In other words, the fund, with its accretions, would belong to the *cestui que trust.* If, however, this sum had been given to Mrs. Gilman, and was added to and mingled with moneys of her own, and with the joint moneys property should be purchased by her, then, to the extent of the money diverted, and interest thereon, recovery might be had, and a lien to that extent impressed upon the property in favor of the *cestui que trust;* but all over that amount would belong to Mrs. Gilman. In other words, while equity will follow a trust fund through any change of form or investment, yet, if the fund be mingled with other moneys, it will only subject the resultant investment to a lien for the amount of the trust fund which can be traced into it. While, therefore, in this case, it is for the purposes of this motion to be assumed that all the premiums were paid with the stolen moneys, yet it is claimed that, under the law in this state, a wife has the right to cause her husband's life to be insured for her benefit; and that, if this be done, the proceeds belong to her, and in no event are they subject to the claims of his creditors to a greater amount than the premiums paid by him over $500 a year and interest. Laws 1840, as amended, 2 Birdseye's Rev. St. 1405. It is thus asserted that the insurable interest which a wife has upon the life of her husband, irrespective of how or by whom the premiums are paid, is her individual and separate property, and, as such, entitled to be recognized and protected under the laws of this state. In the case of *Ætna Nat. Bank* v. *U. S. Life Ins. Co.*, 24 Fed. Rep. 770, it is said: "The policies in this case upon the life of the husband were originally made for the benefit of and payable to the wife. According to the bill, the premiums were paid from the property in fraud of the rights of his creditors, who bring this bill. If this is all true, the amount due on the policy does not represent the property of the husband, nor any part of his estate, beyond the amount of the premiums. The insurance was upon her interest in his life, and the amount due represents her interest, and, beyond the amount of the premiums, is hers. An amount equal to the premiums may represent so much of his estate, and, in equity, belongs to his creditors. They may ultimately, by these proceedings, reach that amount, but there appears no fair ground on which they can reach more." This decision was approved by the supreme court in *Hume* v. *Bank*, 128 U. S. 195, 9 Sup. Ct. Rep. 41. In the latter case it is said: "The obvious distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life, and payable to himself or to his legal representative, and the obtaining of a policy by a person upon the insurable interest of his wife and children and payable to them, has been repeatedly recognized by the courts. * * * The interest insured was neither the debtor's nor his creditors'. The contracts were not payable

to the debtor or his representatives, or his creditors. No fraud on the part of the wife or children, or the insurance company, is pretended. In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are to be held to constitute such gift or transfer. * * * But even though he paid this money out of his own funds when insolvent, and if such payment were within the statute of Elizabeth, this would not give the creditors any interest in the proceeds of the policies which belonged to the beneficiaries, for the reasons already stated." It is difficult to draw any distinction between these cases and the case at bar. Such difference is not to be found in the fact that here the money was stolen; for equity follows property by the same method, whether it be the property of an insolvent for the use of his creditors, or trust money or stolen money wrongfully invested.

I have been referred to no controlling authority either way upon the precise question here presented; but the cases already referred to as sustaining the view that the wife has an insurable interest in her husband's life, which is. her own property, commend themselves to me as right in prin iple. A contrary view, however, has been held in the case of *Shaler* v. *Trowbridge*, in 28 N. J. Eq. 595, which was a case in some respects similar to this. It was therein held that, "where a partner fraudulently misappropriates the money of his firm, and purchases, in his own name, real estate, and policies. of life insurance, with firm funds, he will, in equity, be charged, by construction, as trustee for the partnership. Where all the premiums are paid with the partnership moneys, it makes no difference that the fraud-doer in his lifetime changed the life policies so as to make them payable to his wife. She, having paid no consideration for them, will be charged as a trustee for the firm, and will be permitted to derive no benefit from them." The distinction between this and the other cases in one respect is to be found in the circumstance that in *Shaler* v. *Trowbridge* the policies were originally taken out by the husband payable to himself, while in the cases cited, and the one at bar, the policies were payable to the wife. Another distinction is to be found in the fact that the *status* of a married woman and her rights under the law relating to property and policies of insurance are entirely different in the two states of New Jersey and New York. The question presented upon this motion is a most serious one, the effect being to place this large fund of $56,000 in the hands of the wife, upon a motion determined upon affidavits, which fund, when once obtained, could easily be taken beyond the jurisdiction of the court. It is, moreover, not denied but that the defendant is not pecuniarily responsible, and a distribution of the fund, if the plaintiff should ultimately succeed, might result in its being lost. While, therefore, there is not that reasonable probability, in my opinion, of plaintiff finally succeeding to the extent of obtaining the entire proceeds of the policies of insurance to justify the granting of a preliminary injunction, yet, in view of the position in which the defendant stands to the fund, and the danger of its being lost, and the reluctance which the court, under such circumstances, will have on a motion to take away all the plaintiff's rights before trial, and in view of the contrary conclusion reached by the court of errors in New Jersey in the case of *Shaler* v. *Trowbridge*, I am of opinion that, as the fund is in a trust company, it should not be disturbed until the plaintiff shall have had an opportunity of presenting the facts upon the trial in a more deliberate manner than. can be done upon a motion. Motion granted, costs to abide event.